

FILED

09/09/2025

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                               Criminal No. 3:21cr145

JIHAD SHAHEED UHURU

**MEMORANDUM OPINION**

This matter is before the Court on the *pro se* MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF No. 80); the *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. 3582(c)(1)(A) (Compassionate Release) (*Pro Se* Prisoner) (ECF No. 82); the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 89); the Response of the United States in Opposition to Defendant's Motion for Compassionate Release (ECF No. 95); the *pro se* Defendants [sic] Reply to AUSA for Motion of [sic] Compassionate Release (ECF No. 93); and the *pro se* DEFENDANT'S REPLY TO AUSA'S DENIAL OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 98), and the WORKSHEET IN RESPONSE TO MOTION FOR COMPASSIONATE RELEASE (ECF No. 90). For the reasons set forth below, the *pro se* MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF No. 80), the *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. 3582(c)(1)(A) (Compassionate Release) (*Pro Se* Prisoner) (ECF No.

82), and the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 89) will be denied.

## BACKGROUND

Jihad Shaheed Uhuru ("Uhuru") was named in an eight count Indictment that was returned by the grand jury on December 7, 2021. On February 18, 2022, Uhuru entered a plea of guilty to Count One which charged him with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of cocaine base. The parties agreed that the total drug weight was at least 100 kilograms but less than 400 kilograms of converted drug weight, resulting in a base offense level of 24. (Presentence Report ("PSR"), ECF No. 86, ¶ 12 (quoting ¶ 7 of the STATEMENT OF FACTS) According to the PSR, Uhuru was held accountable for 56.2 grams of cocaine base and 62.51 grams of cocaine hydrocholoride representing the equivalent of 212.89 kilograms of converted drug weight. (ECF No. 86, ¶ 14) There were no objections to the PSR.

The PSR reflected the base offense level of 24 which was increased by two levels for the specific offense characteristic of possessing a firearm during the offense with a total offense level of 26, which was reduced for acceptance of responsibility for a total offense level of 23. The defendant had a criminal history

category VI. This produced a guidelines range of 92-115 months imprisonment.

The offense conduct is relatively straightforward. On six occasions between June 7 and July 6, 2021, Uhuru distributed substantial amounts of cocaine base and cocaine hydrochloride to an undercover operative; and, on June 21 and July 26, 2021, he sold firearms (semiautomatic pistols) to the undercover informant. (PSR, ECF No. 86, ¶ 12).

Uhuru has an extensive criminal history beginning at age 17 with grand larceny convictions (for which no criminal history points were assessed). Then, at age 20, he was convicted of criminal possession of controlled substances. Uhuru's history of criminal activity then continues through 14 pages in the PSR, which recites some 25 criminal convictions including for driving offenses, controlled substances offenses, assault and battery, abduction, use of firearm and robbery, a sex offense (carnal knowledge of a minor), failing to register as a sex offender (on several occasions) and related offenses, failing to appear at court-ordered hearings, obstructing the efforts of a law enforcement officer, and fleeing from a law enforcement officer. (PSR, EFC No. 86, ¶¶ 35-56).

In the Plea Agreement, the parties agreed to recommend a sentence of 96 months which was within the advisory guideline range

of 92 to 115 months.  On January 26, 2023, Uhuru was sentenced to 96 months imprisonment.

Uhuru originally filed a motion for compassionate release *pro se* (ECF No. 80) based principally on two contentions: (1) his younger "brother," Mark David Rice, who is actually Uhuru's half-brother,[1] needs a kidney; and (2) Uhuru is a viable donor.  Uhuru asserted, as an additional reason for compassionate release, that his uncle has been diagnosed at the beginning stages of Alzheimer's Disease and that Uhuru is best suited to take care of him.

Third, Uhuru argued that the prison conditions in the facility in which he was then confined (FCI Hazleton) were such as to support compassionate release.  After the filing of ECF No. 80, Uhuru was transferred to FCI Atlanta and then to FCI Butner, Medium II, where he is currently incarcerated.

Finally, Uhuru presents a rather unusual sentence disparity argument.  On that contention, Uhuru cited a memorandum from then-Attorney General Merrick Garland, stating: "At sentencing, prosecutors should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine." (ECF No. 80, pp. 3-4) ("the Garland Memo"). Those Guidelines were approved by Congress and they have the force of law.  So the Garland Memo

---

[1] As discussed below, that distinction is, in this case, one with a difference because of the nature of kidney donation.

4

is at odds with the law under which Uhuru was sentenced.  And, the Garland Memo is no longer in effect.  Pam Bondi, <u>General Policy Regarding Charging Plea Negotiations, and Sentencing</u>, 4, n.2 (Feb. 5, 2005), https://perma.cc/VV24-7G9K.

At the time of sentencing, Uhuru's guidelines, if based on powder cocaine (as in the Garland Memo), would have been: Total Offense Level <u>15</u>, Criminal History Category VI, imprisonment of 41-51 months. Uhuru argues that the prosecutor's failure to follow the Garland instructions increased his sentence greatly.

Four months after filing ECF No. 80, Uhuru filed another *pro se* motion for reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (*Pro Se* Prisoner). (ECF No. 82). Therein, he asserted that he had submitted a request for compassionate release to the Warden in approximately July 2023 but had received no response. (ECF No. 82, p. 3) As grounds for the requested compassionate release, Uhuru submitted an attachment. Attachment 82-1.  There Uhuru also relied on the assertion that his half-brother, Mark David Rice, "is currently in stage five (5) kidney failure," ECF 82-1, p 1. and, Uhuru asserted that he has been tested for compatibility and that "[i]t may seem that I am a match for my brother, but if more extensive testing is not done then it can't be determined for sure that I am a match." <u>Id.</u>

Also, in ECF No. 82-1, which is very confused and confusing, Uhuru appears to assert, as an additional ground for compassionate release, "that my mental health is not being adequately addressed at this facility (FCI Hazelton) because of the lack of staffing and medical issues." He also complains that illegal drug use is unrestrained at that facility. (ECF No. 82-1, p 2, pp 7-12). However, as previously noted, after ECF No. 82-1 was filed, Uhuru was transferred to FCI Atlanta and then to FCI Butner, Medium II. Also, in the second *pro se* motion for compassionate release, (ECF No. 82), Uhuru pointed out that he has taken and completed numerous classes and has maintained employment while in prison (ECF No. 82-1, p. 4).

Subsequently, counsel was appointed for Uhuru and counsel filed the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (the "SUPPLEMENT") (ECF No. 89). The SUPPLEMENT recited that the defendant had submitted a request for compassionate release to the Bureau of Prisons to which there had been no response. (ECF No. 89, p. 2). The United States does not contest that assertion.

The SUPPLEMENT presents, as the principal predicate for the requested compassionate release, Uhuru's extraordinary and compelling family obligations. (ECF No. 89, p. 2). In that regard, the SUPPLEMENT tells that "Uhuru states that his brother's need

6

for a kidney transplant, as well as his <u>uncle's need for care</u> are of similar gravity to those factors listed in the family section of this guideline [§ 1B1.13(b)(5)]." (ECF No. 89, p. 3) The SUPPLEMENT also says that two situations involving his half-brother and his uncle should be considered together as warranting the requested relief.

The SUPPLEMENT, unlike ECF Nos. 80 and 82, then argues that the factors under 18 U.S.C. § 3553(a) warrant compassionate release. In so doing, the SUPPLEMENT acknowledges the seriousness of the offense and the extensive criminal history that is demonstrated in the PSR. It then argues that Uhuru was exposed to significant domestic violence as a teenager in that he observed domestic violence committed by his stepbrother (Rice) on Uhuru's sister. And, it asserts that Uhuru has degenerative joint disorder for which he is prescribed medication, has suffered bronchitis, for as long as he can recall, and has a history of mental health issues, having been diagnosed with anxiety, depression, and attempted suicide.

And, finally, the SUPPLEMENT adds some polish to Uhuru's early, and incomplete post-sentence rehabilitation argument. So, says the SUPPLEMENT, Uhuru has taken advantage of educational and vocational opportunities, including obtaining a GED, earning an associate's degree, and receiving a series of certificates for

vocational training. All of that is offered in support of the request for compassionate release.

However, the central predicate for compassionate release, and the one repeatedly asserted by Uhuru (see ECF Nos. 80, 82, 98, 101, 104) and the SUPPLEMENT (ECF No. 89) is that Uhuru's half-brother needs a kidney transplant and that his uncle suffers from Alzheimer's disease, a form of dementia, and Uhuru is best-suited to care for the uncle. The other factors mentioned seem to be offered as supplementary to those two principal grounds.

## DISCUSSION

### I.    The Statutory Framework

The applicable statute, 18 U.S.C. § 3582(c)(1)(A) provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling conditions exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3d 784, 785 (W.D. Mo. 2019).

As the United States Court of Appeals for the Fourth Circuit recently explained:

Congress authorized 'compassionate release' in 18 U.S.C.§ 3582(c)(1)(A). That provision begins with the general rule that a 'court may not modify a term of imprisonment once it has been imposed.' Id. It then describes an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification. Id.; see also United States v. Betheau, 54 F.4th 826, 831 (4th Cir. 2022). A court can grant a compassionate release motion if it finds that (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' and (3) that the § 3553(a) factors weigh in favor of granting relief, 'to the extent that they are applicable.' See § 3582(c)(1)-(2).

Elements one and two are supposed to work together. Because '[§]3582(c)(1)(A)(i) does not attempt to define the "extraordinary and compelling reasons" that might merit compassionate release,' the 'Sentencing Commission, pursuant to authority granted it by Congress,' does so instead. McCoy, 981 F.3d at 276 (quoting § 3582(c)(1)(A)(i))). But that only works when there is an applicable policy statement. . . . Without a policy statement applicable to compassionate release motions made by defendants, the district court had discretion to make its 'own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A). . . .' Id. at 284 (cleaned up).

If a district court finds extraordinary and compelling circumstances warrant a sentence reduction, it must then consider whether the factors in § 3553(a) support such a decrease. The § 3553(a) factors include 'the nature and circumstances of the offense' as well as the defendant's history and characteristics, the 'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been

9

found guilty of similar conduct. § 3553(a)(1),
(3), (6). They also include the need for the
sentence 'to reflect the seriousness of the
offense, to promote respect for the law, . . . to
provide just punishment for the offense,' to deter
criminal conduct, to protect the public and to
provide the defendant with appropriate resources
such as 'medical care' and 'vocational training.'
Id. § 3553(a)(1). But district courts are only
required to address the § 3553(a) factors 'to the
extent that they are applicable.' § 3553(a).

United States v. Burleigh, 145 F.4th 541, 547-48 (4th Cir. 2025).

These principles guide the analysis of Uhuru's motion for compassionate release.

## II.  The Exhaustion Requirement

To begin, the Court may consider a motion for compassionate release only if the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the Warden of the defendant's facility whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted his claim for release or the Government does not contest the exhaustion requirement, the district court will conduct a two-step inquiry to decide whether to reduce the defendant's sentence under the statute. United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

Here, Uhuru represents that he filed a request for compassionate release to which the Bureau of Prisons has not responded. Thus, Uhuru says that he has satisfied the exhaustion requirement. The United States does not suggest otherwise. Accordingly, the Court finds that Uhuru has satisfied the exhaustion requirement because there has been no response to his request to the Warden within the time proscribed by the statute.

## III. Extraordinary and Compelling Reasons

Now the inquiry turns to whether Uhuru has established the existence of extraordinary and compelling reasons that warrant compassionate release. As Uhuru acknowledges, the Sentencing Commission, as a matter of policy, has set forth six reasons that can be considered to be extraordinary and compelling under 18 U.S.C. § 3582(c)(1)(A)(i). They are:

(1)  the defendant's medical condition;

(2)  the defendant's age;

(3)  family circumstances;

(4)  whether the defendant has been a victim of abuse during custody;

(5)  other reasons that are "similar in gravity" to reasons (1) through (4); and

(6)  an extraordinarily long sentence.

U.S.S.G. § 1B1.13(b)(1)-(6). <u>See</u> SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 89, pp. 2-3).

In addition, in <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit held that, when considering a motion for compassionate release under Section 603, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise,'" if there is no applicable U.S.S.G. policy position on point. <u>Id.</u> at 284 (citation omitted). And, in <u>McCoy</u>, the Court of Appeals approved decisions of the district court that took into account gross disparities between imposed sentences and the sentences that Congress now considers to be appropriate, the severity of the sentence, and the disparity between sentences of defendants. The Court of Appeals also authorized consideration of the post-conviction rehabilitation.

Considering Uhuru's many and varied filings, the Court concludes that he is taking a shotgun approach that, to varying extents, implicate sections (1), (2), (3), (5), and (6). To those, he adds adverse prison conditions and post-sentencing rehabilitation. However, the principal ground is family circumstances: the needs of his half-brother and his uncle. Nonetheless, all will be considered.

### A.    Family Circumstances

The Sentencing Commission has identified four separate family circumstances to consider in evaluating a compassionate release request.  U.S.S.G. § 1B1.13(b)(3)(A)-(D).  They are:

(A) the death or incapacitation of the caregiver of the defendant's minor child or defendant's child who is 18 years of age or older and incapable of self-care because of mental or physical disability or a medical condition;

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner;

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent; and

(D) The defendant establishes a <u>circumstance similar</u> to those listed in paragraphs (3)(A)-(3)(C) exist <u>involving any other immediate family member or an individual whose relationship with the defendant is similar in kind</u> to that of an immediate family member, <u>when</u> the defendant would be the <u>only available caregiver</u> for such family member or individual.   For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

The two family circumstances (the need to serve as a donor for his half-brother who is said to be suffering from kidney failure; and the need to serve as a caregiver for his uncle who has Alzheimer's disease) on which Uhuru relies do not fit into subsections (A), (B), or (C).  That leaves subsection (D).  Thus,

the first task is to assess whether, either, or both, the kidney donor circumstance or the uncle's circumstance qualify under subsection (D). The briefs do not aid much in that determination. However, it is reasonable to believe that a half-brother in need of a kidney is a circumstance similar to subsection (B) and that the uncle's circumstance is similar to subsection (C). So, assuming that those relational circumstances call subsection (D) into play, it is necessary to determine whether the record supports a finding that either or both provide a basis for compassionate release.

### (1)  Kidney Donor for Uhuru's Half-Brother

The record on this circumstance begins in ECF No. 80, wherein Uhuru asserts that Mark Rice, his younger half-brother, "is faced with needing a kidney." Id. p. 2. Then, in ECF No. 82-1, Uhuru says that Rice "is currently in stage five (5) kidney failure. And, this is currently being dealt with with treatment that isn't a long term solution [dialysis]." Uhuru also suggests that he can be a donor because he is of the O-positive blood type but that "testing still has to be done." Uhuru then tells that certain testing has been done and that "it may seem that I am a match for my brother, but if more extensive testing is not done then it can't be determined for sure that I am a match." Id. at 82-1, p. 1.

14

In the SUPPLEMENT (ECF No. 89), counsel says:

> As detailed in his *pro se* motion, Mr. Uhuru's brother is on dialysis and is in need of a kidney transplant. Undersigned counsel has confirmed this fact with Mr. Uhuru's mother; to date, counsel has not been able to reach the defendant's brother but will gladly supplement this motion to confirm the details of his treatment needs.

(ECF No. 89, p. 3) (emphasis added). The record, however, contains nothing further that is probative of Rice's condition.

In a *pro se* reply (filed by Uhuru notwithstanding that he has counsel (ECF No. 98), Uhuru simply cuts and pastes much of what appears in the SUPPLEMENT filed by counsel. Further along in that *pro se* reply there is a section that appears as if it is typed on a different machine, and those pages recite a quote purported to be from a doctor in the "medical records unit" to-wit: "he [Uhuru] inquired about his Blood type b/c his brother is on dialysis and he [Uhuru] is thinking about donating his [Uhuru's] kidney." (ECF No. 98, p. 6)[2]

---

[2] Uhuru suggests that he has attempted to initiate further steps toward becoming a donor and implies that the prison has not acted on the steps he has taken. (ECF No. 98, p. 6). In support of that statement, Uhuru points to an email (ECF No. 98-2) asking his case manager for help in getting paperwork to file a medical furlough "so I can give my brother my kidney." The case manager replied claiming not to be familiar with any paperwork from Unit Management for this [topic] and advised that the medical department would have to handle this. There is no indication in the record that Uhuru has taken the matter to the medical department.

(a)  The Bureau of Prisons Medical Furlough Program

Before assessing the substantive record offered in support of the kidney donor circumstance, it is necessary briefly to acknowledge that the Bureau of Prisons has a medical furlough procedure which, if applied, could permit Uhuru to serve as a donor for Rice. And, in ECF No. 98-2, Uhuru says that is what he wants to do. In all his other papers, Uhuru asserts in conclusory statements that the BOP furlough procedure is not available because it is expensive and his family cannot afford it. However, the record contains no proof of the family's financial situation or the cost of the medical furlough procedure. Reasonably construed, Uhuru's papers simply have taken off the table the medical furlough option on the basis of those conclusory assertions.[3]

As a substantive matter that means that Uhuru has not met his burden  to show that compassionate release is appropriate because if he qualifies for the BOP Program and if he can pay the costs associated with it, there is no extraordinary or compelling reason for compassionate release. But, that point has not been briefed,

---

[3] It could be asserted that Uhuru has not exhausted administrative remedies because he has not applied for the furlough and been turned down for it and has not demonstrated fiscal inability to pay for such procedure. United States v. Davis, No. 3:18-CR-J-20MCR, 2020 WL 7238510, at *2 (M.D. Fla. Dec. 9, 2020). However, the United States has not made that argument and the Court will not consider it.

so, we will put that impediment aside and turn to the substantive assessment of each family circumstance.

### (b)  The Record on the Kidney Donor Circumstance

The record, construed most favorably to Uhuru, consists of unproven assertions that his half-brother has kidney disease, is on dialysis, and needs a kidney.  It also asserts, again without proof, that some initial blood work shows that Uhuru "might be" a suitable donor for his half-brother.  Construed as a whole, and according Uhuru the benefit of permissible inferences, the record just does not establish the predicate for this component of Uhuru's compassionate release request.

First, the assertion that Uhuru's half-brother is in need of a kidney transplant is just that—an assertion.  There is no documentation of the half-brother's condition other than a hearsay statement from Uhuru's mother and the many unsupported assertions made by Uhuru.  That necessitates a conclusion that Uhuru has failed, at the threshold, to meet his burden to prove this—the most important of Uhuru's asserted extraordinary and compelling reason for compassionate release.

Second, the record does not establish that Uhuru is a qualified donor because the necessary examinations have not been accomplished.  That too forecloses a finding that Uhuru has met his burden.

The Court has located two decisions in which prisoners have sought compassionate release to be able to serve as a kidney donor for a family member. In United States v. Lightfoot, No. 3:17-CR-00274, 2025 WL1335678, at *3 (W.D. La. May 6, 2025), the prisoner, Lightfoot, relied, as does Uhuru here, upon the family circumstances provision to establish extraordinary and compelling reasons for compassionate release. There, as here, the record respecting the sibling's need for a kidney was based on conclusory assertions unsupported by medical evidence. The same was true respecting proof that Lightfoot was the only possible caregiver, i.e. donor for the kidney. Accordingly, because the record did not establish the medical need for a donated kidney and established only the possibility that Lightfoot might qualify as an organ donor, and did not show that he was the only available donor, the Court denied the request for compassionate release.

The decision in United States v. Davis, No. 3:18-CR-223-J-20MCR, 2020 WL 7238510, at *2 (M.D. Fla. Dec. 9, 2020) also illustrates that it is necessary that the defendant actually offer proof that there is a requirement that the relative (a stepfather there) actually needed a kidney and that he has been screened by the organ exchange program and that his kidney is a suitable match to make a donation. In Davis, as in Lightfoot, the absence of

18

such proof resulted in the denial of the request for a finding of extraordinary and compelling reasons for compassionate release.

The same is true here. The evidence simply does not establish that the half-brother requires a kidney. Nor does it establish that Uhuru's kidney would be a match for the half-brother. And, that is particularly significant here because Uhuru and his half-brother cannot be exact genetic matches. Given the absence of proof on those subjects, the Court cannot find that Uhuru has carried his burden to establish a family circumstance predicate for a finding of extraordinary and compelling reason for compassionate relief.

### (2) Uhuru's Uncle's Dementia

The record respecting the claim about the uncle's dementia is likewise deficient. In ECF No. 80, Uhuru recites that his uncle has "been diagnosed with the beginning stages of Althimers [Alzheimer's]." Uhuru also alleges that, because the uncle's wife has passed away, Uhuru is the most suitable caregiver for his uncle.

To begin, there is nothing in the record to prove that the uncle actually has Alzheimer's disease or the extent of its effect on the uncle. Moreover, there is no showing that Uhuru actually has any special relationship with the uncle, which is an important component of the application of § 1B1.13(b)(5). In addition, in

19

ECF No. 89, Uhuru says that Uhuru's uncle is in an assisted living facility. That, of course, establishes that the uncle is being cared for. And the only evidence offered to show that Uhuru should be the caregiver is his statement that "Mr. Uhuru believes he would be better situated as a family member to provide care for his uncle." That is not enough.

In sum, there is no proof of the fact of the uncle's condition, the state of his condition, the adequacy of his care in the care facility, or that there is no other available caregiver. Nor is there any showing that Uhuru has such a relationship with the uncle that the uncle would qualify as a relative under the meaning of the regulation in any event. So, this predicate for a Family Circumstance compassionate release has not been proved.

### (3)   The Combination of Circumstances

Both Uhuru and the SUPPLEMENT assert in conclusory form that the kidney donor circumstance and the uncle's Alzheimer's disease should be considered together to constitute extraordinary and compelling reasons for release. There is no explanation why that should be, and it is difficult to understand how the combination of circumstances could exist. There is no doubt that, if Uhuru were to donate a kidney, he would be incapacitated for some period of time for the run-up to, and the follow-up after, the procedure. And, there is no showing how he could, at the same time, care for

20

his uncle.  Nor is there evidence that Uhuru is qualified to care for a person suffering from Alzheimer's disease.

But, even if all that is put aside, the record still fails to prove the need for a kidney donor, or Uhuru's suitability to be a donor.  Nor does the record prove the uncle's condition or that Uhuru is the only possible caregiver.  Considering the two unproven grounds together does nothing to warrant compassionate release. Zero plus zero is still zero.

### B.    Other Asserted Grounds

#### (1)    Uhuru's Medical Condition (Mental Health)

Uhuru attached to his *pro se* Motion (ECF No. 82) a rather confusing document (ECF No. 82-1).  There, Uhuru seems to contend that his mental health is not being adequately addressed because of the lack of staffing and medical issues at his facility of confinement which, at the time, was FCI Hazleton.  However, after ECF No. 82-1 was filed, Uhuru was transferred to FCI Atlanta and FCI Butner, Medium II.  And, since that transfer, there has been no augmentation of, or further argument with respect to, Uhuru's mental health treatment.

In the SUPPLEMENT filed by counsel, there is an argument in the discussion of the § 3553(a) factors that Uhuru has degenerative joint disorder, has suffered bronchitis, and has a history of mental issues.  There is no contention that the joint disorder or

the respiratory condition are not being adequately treated. There
is also an assertion that Uhuru was exposed to domestic violence
when he observed his half-brother (Rice) commit domestic violence
on Uhuru's sister.    That apparently is intended to relate to
Uhuru's mental health, but there is nothing in the record that
links the two.    Nor does the record reflect that the observation
actually affected Uhuru's mental health.    Thus, as an independent
ground for compassionate release, the mental health assertions
carry no weight.

### (2)    Failure of the Bureau of Prisons to Control Drug Use at FCI Hazelton

Uhuru's transfer from FCI Hazelton to FCI Atlanta and to FCI
Butner, Medium II eliminates any need to consider that asserted
ground for compassionate release.

### (3)    The Disparity of Sentence

Uhuru argues that there is a sentence disparity that should
be considered because, at the time of his sentencing, the Attorney-
General had instructed that: "at sentencing, prosecutors should
advocate for a sentence consistent with the guidelines for powder
cocaine rather than crack cocaine," (ECF No. 80, pp. 3-4) and
that the instruction was not followed in his sentencing.

The Garland Memo is no longer in effect.    But, even if it
were, it is of no moment for several reasons.

22

First, the Garland Memo is an instruction to consider the crack to powder ratio to be 1:1. That is flatly at odds with the Congressionally approved Guidelines, i.e., the law. In other words, the Garland Memo was an Executive Branch instruction to prosecutors to act contrary to law. Whatever may be said about such conduct by the Executive Branch, it is not conduct of which the judiciary should ever approve. Congress spoke. The Executive Branch is obligated to enforce that law. And, the courts are obligated to apply the law, as enacted by Congress unless there is some constitutional reason not to do so. No such reason is asserted. In any event, the Garland Memo is no longer effective. Supra. For these reasons, Uhuru's disparity argument lacks merit.

## CONCLUSION

Considering the record as a whole, the principal basis asserted to support the requested compassionate release are the ability to serve as a kidney donor for his half-brother and to be the caretaker for his uncle and, as explained above, the motion fails on both fronts. Accordingly, the pro se MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF No. 80); the pro se MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. 3582(c)(1)(A) (Compassionate Release) (Pro Se Prisoner) (ECF No.

23

82); and the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 89) will be denied. However, the Court recognizes that there is a possibility that Uhuru's half-brother actually needs a kidney and that Uhuru might be able to serve as a donor. Accordingly, if the Court is subsequently presented with a request for compassionate release that qualifies and meets the applicable requirements of law and is supported by requisite evidence, it will consider the matter anew. To the extent that the motion for compassionate release is based on other grounds other than family circumstances, it lacks merit for the reasons set forth in Section III.B above. Accordingly, the *pro se* MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF No. 80); the *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. 3582(c)(1)(A) (Compassionate Release) (*Pro Se* Prisoner) (ECF No. 82); and the SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE AND INCORPORATED MEMORANDUM IN SUPPORT (ECF No. 89) will be denied without prejudice.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 8, 2025

24